CHRISTOPHER J. CANNON, State Bar No. 88034
MATTHEW A. LAWS, State Bar No. 273697
Sugarman & Cannon
180 Montgomery Street, Suite 2350
San Francisco, CA 94104
Telephone: 415-362-6252
Facsimile: 415-362-6431

Attorneys for Defendant DEANDRE WASH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     vs.<br><br>DEANDRE WASH,<br><br>          Defendant. | Case No. CR 14-00127 JSW<br><br>**RESPONSE TO GOVERNMENT'S SURREPLY REGARDING ELECTRONIC SURVEILLANCE**<br><br>Date: June 23, 2015<br>Time: 1:00 p.m.<br>Judge: Hon. Jeffrey S. White |

1   The Government claims: "The agents used the GPS location data to approximate Defendant's
2 location, but never located the precise location of <u>his</u> private home." (GB 4, emphasis added). We hope
3 the government is not being deliberately cagey in its response and attempting to mislead. We have never
4 contended Deandre Wash was in <u>his</u> private home. As an invited guest in another's private home, Wash
5 has standing to object to the search. See <u>Minnesota v. Olson</u>, 496 U.S. 91 (1990). Because the
6 government never complied with the warrant requirements of Federal Rules of Criminal Procedure 41(C)
7 to seek a warrant for a tracking device, all evidence and the fruits of the evidence seized under the pen
8 register application here must be suppressed.

9   Real time cell phone location data gives the precise location coordinates of a phone, whether that
10 phone is in a public park or in a private home. The location coordinates here contain six digits describing
11 a radius of less than 100 mm, or about 4 inches.[1] A location this precise can show whether Wash was on
12 a public street or in a private home. In <u>United States v. Rigmaiden</u>, (D. Ariz. No. CR 08-814-PHX-
13 DGC), the government explained that it seeks a warrant when a cell site simulator would locate an
14 individual in a protected space. Pell & Soghoian, Harvard Journal of Law & Technology Volume 28,
15 Number 1, Fall 2014, p. 32. There is no reason the government should not have sought a warrant here.

16   The government also claims there was "no physical occupation or trespass in the pinging of
17 Defendant's cell phone." (GB, Page 2) We strongly disagree.[2]

18   Exhibit J to the government's declaration (Docket No. 60.1) contains the realtime location data
19 the government received. That information was not obtained in the ordinary course of operating a cell
20 phone, but was obtained in response to specific, trespassory pings generated by Sprint at 20 minute
21 intervals in response to a law enforcement request. As in the child's pool game Marco Polo, Sprint
22 would call out Marco, and the phone would respond Polo generating a location report that Sprint would
23 email to law enforcement. These were not records kept in the ordinary course of cell phone business but

---

[1] For a detailed description of the accuracy of longitude and latitude and how the mathematics work See: http://en.wikipedia.org/wiki/Decimal_degrees.  See also: http://www.gps.gov/systems/gps/performance/accuracy/

[2] In our Reply (Docket No. 63) we stated: "there was no personal trespassory contact with Wash's person, there was, however, an unwarranted acquisition of location information and that information was obtained by an intrusion into his cell phone records." (Docket No. 63, Page 2). That statement was based on our understanding of the process, as we knew it then. We now know there was a trespassory pinging of Wash's phone.

REPLY TO GOV'T. RESPONSE TO MTN. FOR SEARCH AND DISCLOSURE OF ELEC. SURVEILLANCE      1
CR 14-00127 JSW

were specific realtime location information that would not have been otherwise generated and required law enforcement, through its agent Sprint, to trespass into Wash's phone in order to generate the location information.[3]

The government used trespassory "pings" to force Wash's phone to reveal GPS information that would not normally be transmitted.  The Restatement (Second) of Torts defines a trespass to chattels to include "using or intermeddling with a chattel in the possession of another." RESTATEMENT (SECOND) OF TORTS § 217 (1965).[4]  In eBay, Inc. v. Bidder's Edge, Inc., 100 F.Supp.2d 1058, 1069 (N.D. Cal. 2000), Judge Whtye held that "[I]t appears likely that the electronic signals sent by [Bidder's Edge] to retrieve information from eBay's computer system are ... sufficiently tangible to support a trespass cause of action."  In America Online, Inc. v. LCGM, Inc., 46 F.Supp.2d 444, 452 (E.D. Va. 1998), the district court held that "the transmission of electrical signals through a computer network is sufficiently "physical" contact to constitute a trespass to property."  The district court in CompuServe, Inc. v. Cyber Promotions, Inc., 962 F.Supp. 1015, 1021 (S.D. Ohio 1997) ruled electronic signals are considered "sufficiently physically tangible to support a trespass cause of action."  In CompuServe, the district court held that bulk spam emails sent to the plaintiff's servers caused sufficient harm (in the form of decreased bandwidth and goodwill toward the plaintiff's company) to sustain an action for trespass to chattels.  Id. at 1020.  In Sotelo v. DirectRevenue, LLC, 384 F.Supp.2d 1219, 1230–31 (N.D. Ill. 2005), the court held that the installation of spyware created harms including depleted memory, increased energy and bandwidth usage, and thus could support a cause of action for trespass to chattels.

Federal Rule of Criminal Procedure 41(C) requires an application to obtain a "Warrant for a Tracking Device. A tracking-device warrant must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a reasonable length of time that the device may be used."  Law enforcement never made an application for a warrant for a tracking device here.

---

[3] "Cellular service providers typically do not maintain records of the GPS coordinates of cellular telephones operating on their network, but the provider may generate such location data at any time by sending a signal directing the built-in satellite receiver in a particular cellular telephone to calculate its location and transmit the location data back to the service provider. This process, known as "pinging," is undetectable to the cellular telephone user." In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel., 849 F. Supp. 2d 526, 534 (D. Md. 2011)

[4] RESTATEMENT (SECOND) OF TORTS § 218 cmt. h (stating that there may be cases in which "the intermeddling is actionable even though the physical condition of the chattel is not impaired").

Law enforcement only applied for an "order authorizing the installation and use of a pen register and trap and trace device." Exhibit G, Doc. No. 60-1.

In In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Telephone, 849 F.Supp.2d 526 (D. Md. 2011), the district court denied a government application for a warrant seeking real-time GPS data from Sprint because the government was seeking information not kept in the ordinary course of business. The district court found that "[t]he government seeks information—essentially, continuous pinging—that is not collected as a necessary part of cellular phone service, nor generated by the customer in placing or receiving a call. Under this circumstance it is difficult to understand how the user "voluntarily" exposed such information to a third party." Id. at 539. The district court held that

> real time, precise location data generated by a cell phone is entitled to a reasonable expectation of privacy and thus is subject to the Fourth Amendment's protections and the procedural requirements of Rule 41. This information is not exempted from Rule 41, as the Court further finds that location data is not an "electronic communication," cell phone providers are "electronic communications services" except to the extent a cell phone is used as a tracking device, and to the extent prospective location information is generated and/or requested a cell phone is classified as a tracking device.

Id. at 583-84. The district court held that it would "not enter an order authorizing disclosure of real time cell site information under authority other than Rule 41, nor upon a showing of less than probable cause" and the district court found "that requests for GPS or any other precise location information generated by, for, or in relation to a cell phone are subject to the same standard." Id. at 584.[5]

Similarly, in United States v. Espudo, 954 F.Supp.2d 1029, 1043 (S.D. Cal. 2013), the district court held that "a warrant to obtain real-time cell site location data may only be granted if the

---

[5] A majority of courts have rejected government attempts to secure real-time location data on less than probable cause under the Electronic Communications Privacy / Wiretap Acts or the Stored Communications Act. See e.g. In re App. of U.S. for an Order for Prospective Cell Site Location Info. on a Certain Cellular Tel., 2006 WL 468300, at *1 (S.D.N.Y. Feb. 28, 2006) ("join[ing] eight decisions by seven other Magistrate Judges"); In re U.S. For an Order Auth. the Discl. of Prospective Cell Site Info., 412 F.Supp.2d 947, 956 (E.D.Wis.2006) aff'd. 2006 WL 2871743 (E.D.Wis. Oct. 6, 2006) (relying in part on congressional testimony of FBI Director to reject hybrid theory); In re U.S. for Orders Auth. Install. & Use of Pen Registers & Caller Ident. Devices on Tel. Numbers, 416 F.Supp.2d 390, 396 (D.Md.2006) (the hybrid theory "leaves the court with authority that is at best murky and, at worst, illusory."); In re U.S. for an Order Auth. Monitoring of Geolocation & Cell Site Data for a Sprint Spectrum Cell Phone No., 2006 WL 6217584, at *2 (D.D.C. Aug. 25, 2006) ("Most of the Magistrate Judges that have considered the hybrid theory have found it to be unavailing."); In re App. of the U.S. for an Order (1) Auth. the Use of a Pen Register & a Trap & Trace Device, 396 F.Supp.2d 294, 318 (E.D.N.Y.2005) (disapproving of "the fallacy of the [hybrid theory's] overarching endeavor of stitching together disparate laws to achieve a result that none alone permits.")

government makes a showing of probable cause."

Here, however, the government did not seek a warrant. The government only applied for and received a court order for "pen register" information.

This case is very different from United States v. Skinner, 690 F.3d 772 (6th Cir. 2012) where the Sixth Circuit approved the location monitoring of a cell phone used on public thoroughfares where the phone had been "bought by a drug supplier and provided to ... Skinner as part and parcel of his drug trafficking enterprise,… ." The Court there held that "Skinner did not have a legitimate expectation of privacy in the phone or in the motorhome that was driven on public roads." Id. at 776

First, we would argue that the Sixth Circuit simply got it wrong in Skinner when it found that cell phone GPS tracking is simply a proxy for legitimate visual observation and that three days of location monitoring is of such a relatively short term period that our society would recognize that monitoring period as reasonable. While Skinner recognizes, as the Supreme Court did in Kyllo and Riley that advances in technology make it much easier to intrude on individual privacy, it gave the benefit of those advances to law enforcement at the expense of privacy stating that: "Law enforcement tactics must be allowed to advance with technological changes, in order to prevent criminals from circumventing the justice system." Skinner, 690 F.3d at 778. The Supreme Court took the opposite position in Riley and Kyllo. Riley v. California, 134 S.Ct. 2473 (2014); Kyllo v. United States, 533 U.S. 27 (2001).

Second, there was no reported trespassory pinging of the phone in Skinner. Here the records indicate that Sprint at the behest of law enforcement, pinged Wash's phone and caused that phone to generate electronic signals that would not otherwise have been generated. Those pings were a trespassory intrusion into Wash's private phone and require suppression of all evidence and fruits of the evidence seized by the real time cell phone tracking in this case.

Dated:  June 11, 2015                    Respectfully submitted,


                                              /s/
                                         Christopher J. Cannon
                                         Matthew A. Laws
                                         Attorneys for Deandre Wash